UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KAYRINKIA J. GILLILAND, | NO. 2:14-cv-2834 JAM AC |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CHASE HOME FINANCE, LLC; CHASE HOME FINANCE, INC.; JP MORGAN & COMPANY; JP MORGAN CHASE; CHASE BANK USA; GLENN MOURIDY; THOMAS WIND, and Does 1-20, et al., | |
| Defendants. | |

Plaintiff Kayrinkia Gilliland brought this action against defendants Chase Home Finance, LLC; Chase Home Finance, Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and Chase Bank USA, N.A., for wrongful foreclosure and other state-law claims.[1]

---

[1] Plaintiff also names "Glenn Mouridy" and "Thomas Wind" as defendants in her case. However, her Complaint makes no reference to either Mouridy or Wind beyond including them as named defendants. (See Compl. (Docket No. 1).) Plaintiff makes no allegations of them taking any action related to her lawsuit or the property it concerns. Accordingly, the court can only conclude that Mouridy and Wind are nominal defendants, whose citizenship is disregarded for purposes of diversity jurisdiction. See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 82 (2005) (describing nominal parties as those who have "no control of, impact, or stake in the controversy"); Kuntz v. Lamar Corp.,

1

1  Defendants now move to dismiss pursuant to Federal Rule of Civil
2  Procedure 12(b)(6) for failure to state a claim upon which relief
3  can be granted.[2]  (Docket No. 7.)

I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff's allegations concern a residential mortgage loan she took out on her home in Sacramento, California.  (See Compl. ¶ 1 (Docket No. 1-1.).)  In December 2009, plaintiff alleges that defendants sent her a notice that promised to modify her home loan if she complied with the terms of a Home Affordable Modification Program Trial Period Plan ("TPP").  (Id. ¶ 20.)  The TPP's terms included a requirement that plaintiff make three monthly trial period payments of $731.29 on January 1, 2010, February 1, 2010, and March 1, 2010.  (Id. ¶ 21.)  Plaintiff alleges that she made all three payments on time, (id. ¶ 22), and on March 31, 2010, defendants wrote to plaintiff congratulating

---

385 F.3d 1177, 1183 (9th Cir. 2004) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  .").  With regard to the remaining Defendants (Chase Home Finance, LLC; Chase Home Finance, Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and Chase Bank USA, N.A.), the Court concludes that the allegations in the complaint are sufficiently detailed to give each Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  For this reason, Defendants' argument that Plaintiff has not complied with F.R.C.P. 8 fails.  See Robinson v. Charter Practices Int'l LLC, No. 2015 WL 1799833, at *8 (D. Or. Apr. 16, 2015) (denying Rule 8 challenge on the grounds that the complaint was sufficiently detailed, "as is evidenced by the defenses raised by and through the defendants' motion to dismiss").

[2] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 22, 2015.

2

her on qualifying for a loan modification and enclosed a Home Affordable Modification Agreement ("CPLM") containing the terms of her modified loan, (id. ¶ 23). Plaintiff allegedly executed and returned the CPLM to defendants. (Id. ¶ 25.)

Plaintiff alleges that, on April 14, 2010, she had two independent conversations with two different representatives of defendants. (Id. ¶¶ 27-28.) Both representatives allegedly confirmed to plaintiff that defendants had received the executed CPLM and that plaintiff had a "solid" agreement with defendants. (Id.) They also allegedly assured plaintiff that she was not in default or arrears, that her home was not in foreclosure proceedings, and that she only needed to make timely payments to remain in compliance with their agreement. (Id.)

Nevertheless, on April 16, 2010, plaintiff allegedly received a call from a collection agency informing her that defendants had reported her in default on her home loan in an amount of about $3,500. (Id. ¶ 29.) Plaintiff alleges that she again contacted defendants and spoke to a representative who now told her that defendants would not honor the terms of the CPLM, that there had been no loan modification, that plaintiff was in default, and that plaintiff should not make further payments. (Id. ¶¶ 30-31.) However, the representative also allegedly told plaintiff that she was being considered for another loan modification, and that while her application for a loan modification was pending, defendants would not file a notice of default or proceed toward foreclosure. (Id. ¶¶ 31-32.) Despite this conversation, plaintiff allegedly continued to follow the terms of the CPLM, including tendering payments in accordance

3

1 with its terms. (Id. ¶ 34.)

2 On May 29, 2010, defendants allegedly notified plaintiff by letter that she was in default in an amount of more than $5,000. (Id. ¶ 35.) The same letter also allegedly stated that plaintiff had failed to make the monthly payments required by the TPP agreement--a statement that plaintiff contends was contradicted by earlier correspondence from defendants confirming timely receipt of the three required TPP payments. (Id.)

9 In June 2010, plaintiff alleges that she again spoke with defendants' representatives who assured her that she was not in foreclosure proceedings and that foreclosure proceedings would not commence while defendants considered her for a loan modification. (Id. ¶¶ 36-38.) Plaintiff allegedly received another written notice on July 6, 2010, demanding past due payments in the amount of $5,729.88. (Id. ¶ 39.)

16 On August 24, 2011, plaintiff alleges that defendants recorded a Notice of Trustee's Sale, listing $161,809 as the loan amount owed. (Id. ¶ 74.) Plaintiff's home was sold at a foreclosure sale on September 20, 2011, for $30,000. (Id. ¶¶ 40, 75.)

21 Plaintiff originally filed her Complaint on September 15, 2014, in the Superior Court of California, County of Sacramento. (See id. at 1.) She asserts ten causes of action: (1) breach of the TPP contract, (id. ¶¶ 45-50), (2) breach of the CPLM contract, (id. ¶¶ 51-56), (3) breach of the TPP's covenant of good faith and fair dealing, (id. ¶¶ 57-61), (4) breach of the CPLM's covenant of good faith and fair dealing, (id. ¶¶ 62-66), (5) wrongful foreclosure, (id. ¶¶ 67-75), (6) intentional

4

misrepresentation, (id. ¶¶ 76-84), (7) unfair business practices in violation of California Business and Professions Code sections 17200, et. seq., (id. ¶¶ 85-95), (8) violation of California Civil Code sections 2923 and 2924, (id. ¶¶ 96-105), (9) violation of California Civil Code sections 2953 and 2954, (id. ¶¶ 106-10), and (10) negligence (id. ¶¶ 111-16). Defendants timely removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[3] (See Notice of Removal (Docket No. 1).)

The case was originally assigned to the Honorable William B. Shubb. On December 9, 2014, defendants moved to dismiss all claims against them pursuant to Rule 12(b)(6). Docket No. 7. After the motion was fully briefed, and in the middle of the hearing on the motion to dismiss, the parties informed Judge Shubb that a notice of related case was pending, requesting that the matter be reassigned to the undersigned. Docket No. 19. Judge Shubb ordered the matter continued, pending a ruling on the notice of related case. Id. On February 5, 2015, this Court issued a related case order, reassigning the matter to the undersigned. (Docket No. 20). Although their motion to dismiss had already been fully briefed - and had been partially heard by Judge Shubb - defendants filed an expanded motion to dismiss,

---

[3] Defendants represent that Chase Home Finance LLC and Chase Home Finance, Inc., merged with and into JPMorgan Case Bank, N.A., in May 2011, and they provide a copy of a letter approving the merger from the Comptroller of the Currency, Administrator of National Banks, signed on April 15, 2011. (See Notice of Removal at 2-3, Ex. 5 (Docket No. 1-1).) Accordingly, the court uses the citizenship of the surviving entity, JP Morgan Chase Bank, N.A., to determine citizenship of the non-surviving entities. See Meadows v. Bicrodyne Corp., 785 F.2d 670, 671-72 (9th Cir. 1986).

5

raising new arguments not discussed in their original motion to dismiss. (Docket No. 21). Because defendants did not request or receive leave of the Court to raise these new arguments, the Court will address only the arguments raised in defendants' original motion to dismiss (Docket No. 7), plaintiff's original opposition (Docket No. 13), and defendants' reply (Docket #10), which are properly before the Court.

## II.  OPINION

### A.  Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The plausibility standard "does not require detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor does it "impose a probability requirement at the pleading stage." Starr v. Baca, 652 F.3d 1202, 1213 (9th Cir. 2011). This standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." Id. at 1217 (quoting Twombly, 550 U.S. at 556). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

1  and common sense." Iqbal, 556 U.S. at 679.

2      B.   Judicial Notice

3      In general, a court may not consider items outside the
4  complaint when deciding a Rule 12(b)(6) motion to dismiss, but it
5  may consider items of which it can take judicial notice. Barron
6  v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). Defendants'
7  request that the court take judicial notice of several documents
8  for purposes of this motion. (See Defs.' Req. for Judicial
9  Notice ("RJN") (Docket No. 7-1).)

10          1.   Judicial Notice of Bankruptcy Filings

11      A district court may consider materials in a Rule 12(b)(6)
12  motion to dismiss that are not part of the pleadings but that are
13  "matters of public record." Lee v. City of Los Angeles, 250 F.3d
14  668, 688 (9th Cir. 2001). Federal Rule of Evidence 201 allows a
15  court to take judicial notice of facts that are not subject to
16  reasonable dispute in that they are either (1) generally known
17  within the territorial jurisdiction of the trial court or (2)
18  capable of accurate and ready determination by resort to sources
19  whose accuracy cannot reasonably be questioned. Rose v. Beverly
20  Health and Rehab. Servs., Inc., 356 B.R. 18, 22 (E.D. Cal. 2006)
21  (Ishii, J.) (citing Duke Energy Trading & Marketing, L.L.C. v.
22  Davis, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001)) (taking judicial
23  notice of filings in bankruptcy proceedings).

24      Defendants request judicial notice of three exhibits: (1) a
25  voluntary bankruptcy petition (2) a discharge order, and (3) a
26  final decree. (See RJN at 1; Defs.' RJN Exs. A-C (Docket No. 7-
27  2).) These three documents apparently relate to a Chapter Seven
28  bankruptcy case initiated by plaintiff in the Bankruptcy Court of

1  the Eastern District of California, which is within this court's
2  territorial jurisdiction.  The existence of a statement within
3  these bankruptcy filings--but not necessarily the truth of that
4  statement--cannot be reasonably questioned.  See Rose, 356 B.R.
5  at 22 (suggesting that judicial notice may be appropriately used
6  to consider the existence, but not the truth, of the matter
7  judicially noticed).  Accordingly, the court will consider the
8  existence of statements made within the three bankruptcy filings
9  for purposes of this motion.  (See RJN Exs. A-C.)

10          2.   Judicial Notice of the Trustee's Deed Upon Sale
11    Through the "incorporation by reference" doctrine, the court
12  may also "take into account documents . . . alleged in a
13  complaint and whose authenticity no party questions, but which
14  are not physically attached to the [plaintiff's] pleading . . .
15  even though the plaintiff does not explicitly allege the contents
16  of that document in the complaint."  Knievel v. ESPN, 393 F.3d
17  1068, 1076 (9th Cir. 2005) (internal quotation marks and
18  citations omitted).  Defendants have provided the court with a
19  "Trustee's Deed Upon Sale" dated September 20, 2011, listing the
20  address of plaintiff's home, "JPMorgan Chase Bank, N.A." as the
21  mortgage beneficiary, and "Alpine Holdings Inc." as the
22  purchaser.  (See RJN Ex. D (Docket No. 7-2).)  However, plaintiff
23  has not affirmed the authenticity of this document, and
24  therefore, the court finds judicial notice of it inappropriate at
25  this time.  See Knievel, 393 F.3d at 1076 (allowing consideration
26  of only those documents "whose authenticity no party questions"
27  on a motion to dismiss).
28

1              3.   <u>Judicial Notice of Consent Order</u>

2       Finally, defendants' request that the court consider a
3  "consent order" pertaining to "the case entitled <u>United States of
4  America et al. v. Bank of America Corporation, et al.</u>, filed in
5  the United States District Court of the District of Columbia,
6  case number 1:12-cv-00361 RMC." (Defs.' Mem. at 14; RJN Ex. E
7  (Docket No. 7-2).)  This consent order is relevant here,
8  defendants represent, in light of California Civil Code section
9  2924.12, which states:

> A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

16 Cal. Civ. Code § 2924.12(g).

17      Consistent with a number of recent district court decisions,
18 the court denies defendants' request for judicial notice and will
19 not consider the applicability of section 2924.12(g) on a motion
20 to dismiss. See <u>Mulato v. Wells Fargo Bank, N.A.</u>, Civ. No. 14-
21 00884 NC, 2014 WL 7243096, at *19 (N.D. Cal. Dec. 19, 2014)
22 (declining to consider section 2924.12(g) on a motion to dismiss
23 because it "appears to be an affirmative defense to be raised on
24 summary judgment"); <u>Rijhwani v. Wells Fargo Home Mortgage, Inc.</u>,
25 Civ. No. 13-05881 LB, 2014 WL 890016, at *9 (N.D. Cal. Mar. 3,
26 2014) (same); <u>Segura v. Wells Fargo Bank, N.A.</u>, Civ. No. 14-04195
27 MWF AJWX, 2014 WL 4798890, at *5 (C.D. Cal. Sept. 26, 2014)
28 (same).

9

1        C.    Discussion
2              1.    Judicial Estoppel
3        "Judicial estoppel is an equitable doctrine that precludes a
4   party from gaining an advantage by asserting one position, and
5   then later seeking an advantage by taking a clearly inconsistent
6   position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778,
7   782 (9th Cir. 2001) (citing Rissetto v. Plumbers & Steamfitters
8   Local 343, 94 F.3d 597, 600 (9th Cir. 1996)).  It is invoked by a
9   court at its discretion.  New Hampshire v. Maine, 532 U.S. 742,
10  750 (2001).
11       "In the bankruptcy context, the federal courts have
12  developed a basic default rule:  If a plaintiff-debtor omits a
13  pending (or soon-to-be-filed) lawsuit from the bankruptcy
14  schedules and obtains a discharge (or plan confirmation),
15  judicial estoppel bars the action." Ah Quin v. Cnty. of Kauai
16  Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013); see also
17  Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.,
18  989 F.2d 570, 571 (1st Cir. 1993) ("Conceal your claims; get rid
19  of your creditors on the cheap, and start over with a bundle of
20  rights.  This is a palpable fraud that the court will not
21  tolerate, even passively.").  The Ninth Circuit has thus applied
22  judicial estoppel "when the debtor has knowledge of enough facts
23  to know that a potential cause of action exists during the
24  pendency of the bankruptcy, but fails to amend his schedules or
25  disclosure statements to identify the cause of action as a
26  contingent asset." Hamilton, 270 F.3d at 784.
27       The Ninth Circuit recently expressed concern over hard-and-
28  fast applications of this rule, particularly if a party's prior

10

1   failure to disclose might have been inadvertent or mistaken.  See
2   Ah Quin, 733 F.3d at 271-77.  It reasoned that, in cases where a
3   plaintiff-debtor inadvertently or mistakenly omits a claim from
4   schedules in a bankruptcy case that may be reopened and amended,
5   "the application of judicial estoppel . . . would do nothing to
6   protect the integrity of the courts, would enure to the benefit
7   only of an alleged bad actor, and would eliminate any prospect
8   that Plaintiff's unsecured creditors might have of recovering."
9   Id. at 275-76.
10       Here, plaintiff filed a voluntary petition under Chapter
11  Seven of the United States Bankruptcy Code on February 26, 2011.
12  (RJN Ex. A at 3 (Docket No. 7-2).)  Defendants point to the fact
13  that, in Section 5 of the Statement of Financial Affairs, under a
14  line asking plaintiff to list "all property that has been
15  repossessed by a creditor, sold at a foreclosure sale,
16  transferred through a deed in lieu of foreclosure or returned to
17  the seller," plaintiff listed the property in question, along
18  with an address for "Chase Home Finance" and a date of "10/10."
19  (Id. at 27.)  This line shows, defendants argue, that plaintiff
20  believed her home had been foreclosed on October 10, 2010, and
21  that plaintiff was "aware of all the facts necessary to assert
22  the claims presented in the Complaint" at the time she filed for
23  bankruptcy.  (Defs.' Mem. at 9-10.)
24       However, plaintiff did not list any claims as personal
25  property in her bankruptcy schedules.  (See RJN Ex. A at 13.)
26  The bankruptcy court subsequently entered a discharge order on
27  May 31, 2011, (see RJN Ex. B), and closed the bankruptcy estate
28  on June 3, 2011, (see RJN Ex. C).  Defendants argue that this

11

omission should therefore estop plaintiff from asserting her claims here. (Defs.' Mem. at 10.)

The Court does not agree. First, the Court is unwilling to conclude from only a vague statement on plaintiff's bankruptcy petition that she had "knowledge of enough facts to know that a potential cause of action exists." See Hamilton, 270 F.3d at 784. Second, plaintiff could not have known that her home was sold at a foreclosure sale at the time she filed her bankruptcy petition on February 26, 2011, when she now alleges that her home was sold at a foreclosure sale on September 20, 2011. (See Compl. ¶¶ 40, 75.) At a minimum, these points raise factual questions regarding plaintiff's decision to list the property in her bankruptcy petition that are appropriately left for a later stage of litigation, when more evidence and context has been presented. See, e.g., Hamilton, 270 F.3d at 780-82 (considering the use of judicial estoppel after the parties presented substantial evidence and moved for summary judgment); Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 556-57 (9th Cir. 1992) (same). The Court therefore denies defendants' motion to dismiss on the basis of judicial estoppel.

    2. Sufficiency of Plaintiff's Complaint

      a. Plaintiff's First Four Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiff's first four claims for breach of contract and breach of the covenant of good faith and fair dealing are barred by the statute of limitations. (Defs.' Mem. at 10-11.) It is well established that "[a] district court may dismiss a claim '[i]f the running of the statute is apparent

on the face of the complaint.'" <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980)).

Under California law, the statute of limitations for breach of contract and breach of the covenant of good faith and fair dealing is four years. Cal. Civ. Proc. Code § 337. Generally, "[a] cause of action for breach of contract does not accrue before the time of breach." <u>Romano v. Rockwell Internat., Inc.</u>, 14 Cal. 4th 479, 488 (1996). However, "if a party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived, an anticipatory breach is said to have occurred." <u>Id.</u>

In the case of anticipatory breach, a plaintiff may elect to either "treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract . . . or . . . treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his [or her] remedies for actual breach if a breach does in fact occur at such time." <u>Id.</u> "[I]n the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance." <u>Id.</u> The same rule applies to ongoing contractual obligations, allowing a plaintiff to "elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." <u>Id.</u>

According to the Complaint, the earliest date plaintiff allegedly learned of problems regarding her loan modification contract with defendants was on April 16, 2010, when she received

13

a phone call from a collection agency. (See Compl. ¶ 29.) Plaintiff alleges that "[i]mmediately thereafter" she spoke to one of defendants' representatives who informed her that defendants would not honor the terms of the modification contract. (Id. ¶¶ 30-31.) Later, on May 29, 2010, plaintiff allegedly received a letter confirming this fact. (Id. ¶ 35.)

Based on these allegations, plaintiff may have regarded these statements and the letter as an anticipatory breach. She therefore had the option to treat defendants' communications as empty threats and continue performance according to the TPP and CPLM's terms. See Romano, 14 Cal. 4th at 488. Plaintiff alleges that she made all timely payments according to the TPP and the CPLM, (Compl. ¶¶ 47, 53), suggesting that she continued performing according to those agreements. Plaintiff's causes of action for breach of the TPP and CPLM thus would not yet have accrued.

On September 20, 2011, plaintiff alleges that defendants sold her home at a foreclosure sale, breaching the TPP and CPLM. (Id. ¶¶ 40, 49, 54.) Plaintiff filed her complaint on September 15, 2014--just under three years later and well within the four-year period provided by the statute of limitations.

Because the Court cannot definitively determine from the face of the Complaint that plaintiff's cause of action accrued earlier than September 20, 2011, see Cervantes, 656 F.3d at 1045, it cannot find that the statute of limitations has run on plaintiff's contract-related claims. Defendants' motion to

dismiss claims one through four is denied.[4]

### b. Plaintiff's Fifth Claim for Wrongful Foreclosure

Defendants argue that plaintiff fails to state a claim for wrongful foreclosure because she fails to allege tender of the amount owed. (Defs.' Mem. at 11-12.) California law recognizes several exceptions to the tender requirement, however, including "if the borrower's action attacks the validity of the underlying debt," Lona v. Citibank, N.A., 202 Cal.App.4th 89, 112 (6th Dist. 2011), or "when a plaintiff proves that the entity lacked the authority to foreclose on the property," Glaski v. Bank of Am., Nat'l Ass'n, 218 Cal.App.4th 1079, 1100 (5th Dist. 2013). For example, courts have not required tender when a debtor and beneficiary enter into a loan modification agreement to cure default, but the beneficiary still forecloses. See Barroso v. Ocwen Loan Servicing, LLC, 208 Cal.App.4th 1001, 1017 (2d Dist. 2012) (citing Bank of Am., N.A. v. La Jolla Grp. II, 129 Cal. App. 4th 706, 712 (5th Dist. 2005)).

While plaintiff titles her fifth cause of action "Wrongful Foreclosure and Violation of Civil Code Sections 2923.6 and

---

[4] Defendants also suggest that that plaintiff's breach of contract claims are ill-plead because plaintiff fails to attach a copy of the TPP or CPLM to her Complaint. (Defs.' Mem. at 12-13.) Plaintiff does not attach the TPP or CPLM, but her Complaint does purport to quote several passages verbatim from the contracts and describes the material terms of both the TPP and CPLM in some detail. (See Compl. ¶¶ 20-21, 23-26, 46, 52.) Accordingly, because plaintiff has plead the form of contract, those terms material to her claim, and defendant's alleged breach of those terms, the court finds this case distinguishable from cases that have dismissed ill-plead breach of contract claims. See, e.g., Altman v. PNC Mortgage, 850 F. Supp. 2d 1057, 1078 (E.D. Cal. 2012) (O'Neill, J.) (noting that plaintiff failed to attach the contract, allege specific terms, or describe what terms a defendant had breached).

2023.7," her allegations do not involve statutory violations and focus instead on the validity of her default and defendants' contractual authority to foreclose in light of the alleged loan modification agreement. (See Compl. ¶¶ 67-75.) Consistent with the exceptions to tender, plaintiff alleges that the terms of the TPP and CPLM modified her loan to cure all delinquent payments and interest, deeming her not in default. (Id. ¶¶ 68-69.) Yet, contrary to these terms, defendants allegedly contended that she was in default and proceeded to foreclose on her home. (Id. ¶¶ 70-75.) Because plaintiff's allegations suggest that she was not required to tender, the Court denies defendants' motion to dismiss this claim.

### c. Plaintiff's Sixth Claim for Intentional Misrepresentation

Defendants argue that plaintiff's sixth claim is also barred by the statute of limitations. (Defs.' Mem. at 11-12.) Under California law, the statute of limitations for a fraud claim, such as intentional misrepresentation, is three years. Cal. Civ. Proc. § 338(d); Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). "The cause of action in that case is not deemed to have accrued until discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. § 338(d).

Plaintiff's intentional misrepresentation claim centers on defendants' assurances that, although they would not honor the terms of the TPP and CPLM, defendants were still considering her for a modification and would not foreclose. (Compl. ¶¶ 77-84.) Plaintiff alleges that she continued to receive and rely upon defendants' assurances "throughout 2010 and 2011." (Id. ¶ 81.)

16

Because those assurances were not proven false until defendants foreclosed on plaintiff's home, it is plausible that plaintiff did not discover the facts constituting the fraud until after the foreclosure sale on September 20, 2011. (See id. ¶¶ 40, 75.) Plaintiff's intentional misrepresentation claim is thus not barred by the three-year statute of limitations on the face of the Complaint, and the Court denies defendants' motion to dismiss this claim.

### d. Plaintiff's Seventh Claim for Unfair Business Practices

Defendants also raise the statute of limitations with regard to plaintiff's seventh claim. (Defs.' Mem. at 11-12.) Claims of unfair business practices pursuant to the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, et seq., must be brought within four years after the cause of action has accrued. See Cal. Bus. & Prof. Code § 17208.

Plaintiff premises her UCL claim on allegations that defendants falsely promised her a permanent loan modification and misled her into believing she could remain in her home by complying with the terms of that modification as described in the TPP and CPLM. (See Compl. ¶¶ 86-87, 95.) Like her contract claims, nothing within plaintiff's Complaint indicates that her cause of action accrued before defendants actually broke these promises by selling her home at a foreclosure sale on September 20, 2011. (See id. ¶¶ 40, 75.) Since the four year statute of limitations has not run on the face of plaintiff's Complaint, the Court denies defendants' motion to dismiss this claim.

      e. Plaintiff's Eighth and Ninth Claims under HBOR

  Plaintiff's eighth and ninth causes of action assert violations of California's Homeowner Bill of Rights ("HBOR"). (See Compl. ¶¶ 16-18, 96-110.)  Her eighth cause of action asserts violations of a variety of statutory obligations during foreclosure proceedings, including California Civil Code sections 2923.5 (Compl. ¶ 97), 2923.7 (id. ¶ 101), 2924 (id. ¶ 103), 2924.6 (id. ¶ 99), 2924.17 (id. ¶ 100), 2924.18 (id. ¶ 98), and 2923.55 (id. ¶ 102).  Her ninth cause of action alleges that defendant engaged in "dual tracking," a deceptive process by which the lender negotiates a loan modification with a borrower in default while simultaneously pressing forward with foreclosure.  See Cal. Civ. Code §§ 2923.6, 2924.18; Lapper v. SunTrust Mortgage, N.A., Civ. No. 2:13-04041 ODW, 2013 WL 2929377, at *2 (C.D. Cal. June 7, 2013) (describing "dual tracking" and its relation to HBOR).

  HBOR's provisions became effective on January 1, 2013.  See Cal. Stats. 2012, Ch. 86, Assembly Bill 278, § 20; Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1152 (N.D. Cal. 2013).  "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."  Rockridge Trust, 985 F. Supp. 2d at 1152 (quoting Myers v. Philip Morris Companies, Inc., 28 Cal. 4th 828, 841 (2002)).  The sections of HBOR cited by plaintiff do not

1  contain a retroactivity clause, and several courts have already
2  concluded that HBOR's provisions do not apply retroactively.
3  See, e.g., id. (dismissing a claim of HBOR violations that
4  occurred before January 1, 2013); Emick v. JPMorgan Chase Bank,
5  Civ. No. 2:13-340 JAM AC, 2013 WL 3804039, at *3 (E.D. Cal. July
6  19, 2013).
7       Plaintiff's complaint alleges that defendants failed to
8  comply with several obligations under HBOR relating to the
9  recording of a notice of default on September 24, 2010, and
10 during the foreclosure process that culminated in the foreclosure
11 sale on September 20, 2011.  (See Compl. ¶¶ 72, 74-75, 97-110.)
12 Her Complaint makes no mention of any conduct that occurred after
13 January 1, 2013, and therefore, no conduct that might plausibly
14 support a violation of HBOR.  Plaintiff's eighth and ninth
15 causes of action therefore fail to state a claim, and the Court
16 grants defendant's motion to dismiss these claims.  As amendment
17 of plaintiff's complaint would be futile, the Court declines to
18 grant plaintiff leave to amend these claims.  Eminence Capital,
19 L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).
20            f.   Plaintiff's Tenth Claim for Negligence
21      Finally, defendants argue that plaintiff's tenth cause of
22 action for negligence is barred by the two year statute of
23 limitations.  (Defs.' Mem. at 11-12.)  See Cal. Civ. Proc. Code.
24 § 339; Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins.
25 Associates, Inc., 115 Cal.App.4th 1145, 1154 (2d Dist. 2004).
26      Plaintiff's allegations focus on an alleged "duty to
27 exercise reasonable care in locating, interpreting and verifying
28 [plaintiff's] account information," (Compl. ¶ 112), and "a duty

of due care in responding to Plaintiff's questions and in advising her how to proceed," (id. ¶ 114).  Plaintiff's tenth claim focuses on alleged conversations she had with defendants' representatives "on or about April 14, 2010" (Compl. ¶ 112), and clearly reveals that she could not plausibly have discovered the facts constituting this claim later than the time her home was sold on September 20, 2011 (see id. ¶ 116); Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) ("The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action."). This claim is barred on its face by the statute of limitations and is dismissed.  As amendment of plaintiff's complaint would be futile, the Court declines to grant plaintiff leave to amend her complaint." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

### III. ORDER

For the reasons set forth above, the COURT GRANTS WITHOUT LEAVE TO AMEND defendants' motion to dismiss plaintiff's eighth, ninth, and tenth causes of action, and DENIES defendants' motion to dismiss plaintiff's first through seventh causes of action.

IT IS SO ORDERED.

Dated: May 13, 2015

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE